OPINION OF THE COURT
Howard Miller, J.
Motion by defendant for an order declaring certain pension credits to be separate property is granted to the extent hereinafter set forth and otherwise denied.
*40 Defendant, a school teaeher/administrator, was employed in the New York State school system from 1966 through 1973, and the Connecticut school system from 1973 to 1980, as a result of which certain pension benefits accrued. Defendant withdrew Ms contributions from each system some time prior to the marriage. The parties were married November 24, 1985, and this action commenced October 17, 1997. After the marriage, defendant “bought back” his New York State pension time from 1966-1973 for $2,961.09. The New York State pension has been in pay position since about August of 1992, and defendant receives $1,096 a month. In January 1995, defendant began installment payments of $10,410 annually to the State of Connecticut to “buy back” Ms pension time from 1973 to 1980.
Defendant contends the pension time “bought back” during the marriage is Ms separate property and relies upon the terms of a prenuptial agreement dated June 26, 1985, a postnuptial agreement dated July 2, 1986, and a joint will executed September 17, 1986.
The prenuptial agreement provides at paragraph 4 (B) that: “Assets belonging to parties [sic] individually at time of signing agreement remain their separate property. Assets accumulated thereafter shall be shared equally.” However, paragraph 4 in its entirety was declared null and void in the postnuptial agreement. The postnuptial agreement went on to provide at paragraph 2 that in the event of a divorce, “the parties agree to renounce their Joint Will, the specific bequests listed therein shall become the separate property of the party disposing of same and all of the remaining assets shall be appraised, sold or exchanged, and the proceeds divided equally.” Significantly, neither the prenuptial agreement, the postnuptial agreement, or the joint will make any reference to defendant’s pension.
NEW YORK STATE PENSION
It is undisputed that: (a) from the date of the marriage until approximately June of 1992 defendant was employed by the New York State school system, and the seven credits earned toward his pension during that period are marital property; (b) from 1981 through 1985 defendant was employed by the New York State school system, and the four credits earned toward Ms pension during those years is separate property; (c) from 1973 to 1980, defendant was employed by the New York State school system, and in June of 1980 “cashed out” Ms contributions to the system; and (d) during the marriage, defendant *41 regained credit toward his pension for service from 1973 to 1980 by the payment of $2,961.09 from marital funds.
Plaintiff correctly argues that when defendant “cashed in” his pension benefits from New York State in June 1973, under Education Law § 503 (3) his membership in the New York State Retirement System ceased. Under Education Law § 509, however, defendant was permitted to “repurchase” his prior time in the system two years after rejoining the system upon payment of the required contribution.
The term “marital property” as used in Domestic Relations Law § 236 (B) must be construed broadly to give effect to the . “economic partnership” concept of the marriage; the term “separate property” must be construed narrowly (Price v Price, 69 NY2d 8). If separate property appreciates during the marriage due to the efforts of the nontitled spouse, the amount of the appreciation is marital property (Price v Price, supra). It is axiomatic that a pension is an asset subject to equitable distribution to the extent earned during the marriage. In contrast to the facts in Majauskas v Majauskas (61 NY2d 481), the pension credits at issue in this case were not “earned incrementally” during the marriage. The pension credits earned by defendant from 1966-1973, had defendant not cashed them in, would undoubtedly have been his separate property. Once cashed in, however, the pension credits were, at best, a potential but dormant asset, of no value until defendant fulfilled certain statutory obligations. The asset reacquired a value during the marriage, when defendant fulfilled his obligations with respect to employment and repaid his contributions with marital funds.
There is nothing in the record before the court to indicate the value of the pension at the date of commencement of this action, or the value of the pension on that date had defendant not elected to repurchase the 1966-1973 credits. The purchase of prior credits did not create a new pension; rather it was a modification and enhancement of an existing asset (see, e.g., Olivo v Olivo, 82 NY2d 202). Thus, the increase in value of this asset occurred during the marriage and was effected by use of marital funds. To the extent that the pension acquired an enhanced value during the marriage, that enhanced value is marital property.
Such a determination does not, however, ipso facto, imply that plaintiff is entitled to share in such appreciation. Plaintiff must demonstrate the manner in which her contributions resulted in the increase in value of the pension and the amount *42 of the increase attributable to her efforts (Elmaleh v Elmaleh, 184 AD2d 544; Domestic Relations Law § 236 [B] [5] [d] [6]). A pension which encompasses both marital and premarital employment efforts must be distributed in such fashion as to reflect the economic realities (see, e.g., Burns v Burns, 84 NY2d 369).
THE CONNECTICUT PENSION
It is undisputed that: (a) defendant was a member of the State of Connecticut Teachers’ Retirement System from September 1, 1973 to June 30, 1980; (b) defendant “cashed out” his contributions in June of 1980; (c) in 1994 defendant rejoined the school system; (d) in November 1994, defendant was afforded the opportunity to buy back the 1973-1980 years of service so long as he was a member of the system by the payment of $42,064.29 prior to December 31, 1994, or by monthly installment payments of $886 with interest at 7.53% until paid in full; and (e) defendant elected to make installment payments of $1,041 a month for 10 months a year commencing in January 1995 via a deduction from his New York State pension payments.
Defendant is presently working in the Connecticut school system, and has not as yet made all payments necessary to “buy back” the 1973-1980 credits. The fact that defendant elected to utilize Ms pension income to repay the Connecticut school system does not remove those funds from the marital estate. The maximum amount that has been expended to date from marital funds would be approximately $31,230 ($10,410 per year X 3 years [1995, 1996 and through October 1997]).
It cannot be determined on the papers before the court whether, at the time of commencement of this action, the payments made from 1995-1997 to repurchase time credits enhanced the value of the Connecticut pension. Thus with respect to the Connecticut pension, no determination can be made at this time. At trial, the parties must offer sufficient evidence of the value of the pension on the date of commencement of this action, and the difference, if any, in the value of the pension. which resulted from the payments made during the marriage to repurchase past credits.